IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Ryan Pilarte-Harrigan, #24077-069, | ) | |
| | ) | C.A. No. 3:10-885-HMH-JRM |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| Warden Owens, FCI Williamsburg; | ) | |
| Federal Bureau of Prisons, | ) | |
| | ) | |
| Respondents. | ) | |

    This matter is before the court with the Report and Recommendation of United States Magistrate Judge Joseph R. McCrorey, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1]  Ryan Pilarte-Harrigan ("Pilarte-Harrigan"), a federal prisoner proceeding pro se, seeks habeas relief pursuant to 28 U.S.C. § 2241.  On July 7, 2010, the Government filed a motion to dismiss or in the alternative motion for summary judgment.  Magistrate Judge McCrorey recommends denying the Government's motion and dismissing Pilarte-Harrigan's petition without prejudice for failure to exhaust administrative remedies.  Pilarte-Harrigan filed objections to the Report and Recommendation on January 6, 2011.  For the reasons explained below, the court declines to adopt the magistrate judge's Report and Recommendation and grants the Government's motion for summary judgment.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court.  See Mathews v. Weber, 423 U.S. 261, 270 (1976).  The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

1

I. FACTUAL AND PROCEDURAL BACKGROUND

On October 8, 2003, the United States District Court for the District of Puerto Rico indicted Pilarte-Harrigan for conspiracy to possess with intent to distribute and distribution of at least two kilograms of cocaine. (Mot. Dismiss Alternative Mot. Summ. J. (hereinafter "Mot. Summ. J.") Ex. 1 (Farrar Aff. ¶ 5).) Pilarte-Harrigan pleaded guilty to the federal charges, (Pilarte-Harrigan § 2241 Pet. at 3-4), and on September 23, 2005, the district court sentenced him to 100 months' imprisonment. (Mot. Summ. J. Ex. 1 (Farrar Aff. ¶ 7).) When Philarte-Harrigan was sentenced, he was in the primary custody of the Commonwealth of Puerto Rico Department of Corrections serving sentences of imprisonment for conduct relating to the federal charges. (Id. Ex. 1 (Farrar Aff. ¶¶ 6-7).) Federal officials gained temporary custody of Pilarte-Harrigan pursuant to a writ of habeas corpus ad prosequendum. (Id. Ex. 1 (Farrar Aff. ¶ 6).) Following his sentencing on September 23, 2005, Pilarte-Harrigan was returned to the Puerto Rico Department of Corrections for completion of his commonwealth sentence. (Report & Recommendation at 4.)

During Pilarte-Harrigan's sentencing hearing, the sentencing judge declared that Pilarte-Harrigan's 100-month term of imprisonment "is to be served concurrently with any remaining local sentence" and that "[t]ime already served in connection with the instant offense shall be credited." (Pet. Resp. Opp'n Mot. Summ. J. Ex. 1 (Sentencing Tr. at 13).) To effectuate the sentencing judge's intent that Pilarte-Harrigan's federal sentence run concurrently with his local sentence, the Bureau of Prisons ("BOP") designated the Puerto Rico Department of Corrections as a facility for service of Pilarte-Harrigan's federal sentence. (Mot. Summ. J. Ex. 1 (Ferrar Aff. ¶ 12).) This designation allowed Pilarte-Harrigan's sentence to commence upon its imposition

and run concurrently with the undischarged commonwealth sentence. (Id. Ex. 1 (Farrar Aff. ¶ 12).) The BOP did not, however, award Pilarte-Harrigan prior custody credit for any time he spent in federal custody prior to the imposition of his federal sentence.

In September 2009, Pilarte-Harrigan challenged the BOP's computation of his sentence and release date at the administrative level. (Pilarte-Harrigan § 2241 Pet. Ex. 2 (Informal Resolution Forms at 1).) Based upon statements made by the district court during the sentencing hearing, Pilarte-Harrigan contended that he was entitled to prior custody credit for time he spent in federal custody prior to September 23, 2005, the date on which his federal sentence was imposed. (Id. Ex. 2 (Informal Resolution Forms, generally).) Pilarte-Harrigan completed each step of the BOP's administrative remedy procedure. (Id. Exs. 2-4 (Administrative Remedy Forms, generally).) Both the warden and the BOP regional administrator denied Pilarte-Harrigan's request to recompute his sentence. (Id. Exs. 2-3 (Administrative Remedy Forms, generally).) On February 4, 2010, Harrell Watts ("Watts"), the Administrator of National Inmate Appeals for the BOP, granted Pilarte-Harrigan the relief he sought and awarded him prior custody credit for detainment from January 27, 2004 (the date on which he was "borrowed" by federal officials) through September 22, 2005 (the day prior to the imposition of his sentence), a total of 605 days of credit. (Id. Ex. 4 (Watts Response at 1).)

In a letter to Pilarte-Harrigan, Watts noted that the award of prior custody credit was based exclusively upon statements made by the court during Pilarte-Harrigan's sentencing hearing rather than the applicable sentencing computation statute or the BOP's Sentence Computation Manual. (Pilarte-Harrigan § 2241 Pet. Ex. 4 (Watts Response at 1).) According to the BOP, awarding Pilarte-Harrigan credit for time spent in federal custody prior to September

3

23, 2005 contravened 18 U.S.C. § 3585(b) because that time was credited against his local sentence. (Mot. Summ. J. Ex. 1 (Farrar Aff. ¶ 14).) Therefore, the BOP sent a letter to the sentencing court in an attempt to reconcile its intent that Pilarte-Harrigan receive prior custody credit with § 3585(b). In its letter, the BOP suggested alternative ways under the United States Sentencing Guidelines that the court could legitimately craft a sentence. (Id. Ex. 1 (Farrar Aff. ¶ 15).) Because the sentencing judge retired prior to receipt of the BOP's letter, the matter was assigned to another judge in the District of Puerto Rico. (Report & Recommendation at 6.) After reviewing the transcript of Pilarte-Harrigan's sentencing hearing, the judge responded to the BOP: "Therefore, it seems clear that [the sentencing judge] was aware of the provisions of Title 18 U.S.C. § 3585(b) and that it was not his intent to award credit for any time Mr. Pilarte spent in state custody (January 27, 2004 through September 25, 2005) prior to the date Judge Laffitte imposed sentence. There is no need for an amended judgment." (Id.) Based upon this letter, the BOP re-computed Pilarte-Harrigan's sentence, removing the 605 days of prior custody credit it awarded him. (Id. at 7.)

On April 9, 2010, Pilarte-Harrigan filed the instant § 2241 petition challenging the BOP's computation of his sentence. The Government filed a motion to dismiss or in the alternative motion for summary judgment on July 7, 2010.[2] The magistrate judge issued his Report on December 22, 2010, and on January 6, 2011, Pilarte-Harrigan filed objections to the Report and Recommendation. This matter is now ripe for review.

---

[2] Because the parties rely on documents outside of the pleadings in support of their respective claims, the court regards the Government's motion as one for summary judgment.

4

## II. Discussion of the Law

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. Further, a litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996).

### B. Claim Exhaustion

Although the text of 28 U.S.C. § 2241 does not contain an exhaustion requirement, courts have required federal prisoners to exhaust available administrative remedies prior to seeking judicial review of a § 2241 habeas petition. McClung v. Shearin, No. 03-6952, 2004 WL 225093, at *1 (4th Cir. Feb. 6, 2004) (unpublished). In his Report and Recommendation, Magistrate Judge McCrorey recommends dismissing Pilarte-Harrigan's petition without prejudice for failure to exhaust his administrative remedies. (Report & Recommendation 10.)

Pilarte-Harrigan contends, and the Government does not dispute, that he fully exhausted available administrative remedies. (Objections at 6; Mot. Summ. J. at 4.)

The BOP has an administrative remedy procedure for inmates to raise grievances relating to their confinement. 28 C.F.R. § 542.10 et seq. As an initial step, an inmate must attempt to resolve his grievance through informal resolution before engaging the BOP's formal administrative remedy procedure. § 542.13. If informal resolution proves fruitless, the inmate must then navigate the BOP's three-tiered formal administrative process to exhaust available administrative remedies. First, the inmate must file with the warden an Administrative Remedy Request detailing the prisoner's grievance. Id. The warden is required to respond to the inmate's remedy request, and if unfavorable, the inmate may then appeal to the BOP's Regional Director within twenty days. § 542.15. If the inmate's appeal is denied, the third and final step requires the prisoner to appeal to the Administrator of the National Inmate Appeals for the Office of General Counsel. Id. Completion of these three tiers fully exhausts an inmate's administrative remedies and allows the inmate to seek judicial review of his challenge.

Pilarte-Harrigan initiated a challenge to the computation of his term of imprisonment in September 2009, contending that the BOP's computation of his sentence fails to effectuate the sentencing judge's intent that his federal and local sentences run concurrently and that he receive prior custody credit for pre-sentence detainment from January 27, 2004 through September 22, 2005. As outlined above, Pilarte-Harrigan completed this grievance process. The magistrate judge noted that Pilarte-Harrigan's § 2241 petition "appears to be challenging the process and re-computation of his sentence that followed the appeal," and therefore, he recommends that the

6

court dismiss Pilarte-Harrigan's petition so that Pilarte-Harrigan can seek administrative review of the re-computation of his sentence (Report & Recommendation at 8.)

The essence of Pilarte-Harrigan's challenge to the BOP's computation of his sentence has remained unchanged. He claims, as he did to BOP officials throughout administrative review, that the computation of his sentence of imprisonment is inconsistent with the sentencing judge's intent that his federal and commonwealth sentences run concurrently and that he receive prior custody credit for pre-sentence detainment from January 27, 2004 through September 22, 2005. (Pilarte-Harrigan Mem. Supp. § 2241 Pet. at 4; Pilarte-Harrigan Mot. Traverse Opp'n Resp't Reply Mot. at 3.) Because this claim has been fully presented to the BOP, the court finds that Pilarte-Harrigan has exhausted available administrative remedies and that this matter is ripe for judicial review.

### C. Merits of Pilarte-Harrigan's Claim

Pilarte-Harrigan predicates his claim for § 2241 relief on two grounds. First, he alleges that the BOP "failed to review his nunc pro tunc request based on relevant standards, laws, rules, and policy statements," and second, he claims the BOP "'usurped' judicial authority in its execution of his federal sentence." (Pilarte-Harrigan § 2241 Pet. at 5.) Based upon these allegations, Pilarte-Harrigan contends the BOP's computation of his term of imprisonment constitutes an abuse of discretion.

When a court imposes a federal criminal sentence, the BOP is responsible for computing the inmate's term of imprisonment. United States v. Wilson, 503 U.S. 329, 334 (1992) (recognizing that the United States Attorney General has delegated this authority to the BOP). Calculation of a federal sentence is governed by 18 U.S.C. § 3585 and requires that the BOP

(1) ascertain the date on which the federal sentence commences and (2) determine the extent to which the inmate may receive credit for time spent in custody prior to the commencement of the sentence.

### 1. Commencement

Pursuant to 18 U.S.C. § 3585(a) and the BOP's policy in computing sentences, a federal sentence cannot commence prior to the date of its imposition and until the defendant is in federal custody. United States v. Evans, 159 F.3d 908, 911 (4th Cir. 1998); United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir. 1998). When a federal court sentences a defendant who is in state custody and is borrowed by federal authorities to dispose of federal charges pursuant to a writ ad prosequendum, the inmate's federal sentence generally does not commence until the inmate fully discharges the state sentence and is transferred to federal custody. Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992). However, an inmate in non-federal custody may have his federal sentence commence the date it is imposed if the BOP makes an nunc pro tunc designation under 18 U.S.C. § 3621(b), which allows the non-federal facility to serve as a place for service of the federal sentence. Evans, 159 F.3d at 911-12. Section 3621(b) enumerates the following factors for the BOP to consider in making nunc pro tunc designations: (1) the resources of the non-federal facility; (2) the nature and circumstances of the offense; (3) the history and characteristics of the inmate; (4) any pronouncements made by the sentencing court; (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2). The BOP is afforded wide latitude in exercising its delegation authority under § 3621(b). Trowell v. Beeler, No. 04-6531, 2005 WL 1181858, at *2 (4th Cir. May 19, 2005) (unpublished).

The district court sentenced Pilarte-Harrigan on September 23, 2005. Because a federal sentence cannot commence prior to its imposition, September 23, 2005 is the earliest date on which Pilarte-Harrigan's sentence could commence. During Pilarte-Harrigan's sentencing hearing, the sentencing judge declared that the "sentence is to be served concurrently with any remaining local sentence." (Pet. Resp. Opp'n Mot. Summ. J. Ex. 1 (Sentencing Tr. at 13).) However, when he was sentenced, Pilarte-Harrigan was in the primary custody of the Commonwealth of Puerto Rico, and he was in temporary federal custody pursuant to a federal writ ad prosequendum. To effectuate the sentencing judge's intent, the BOP designated the Commonwealth of Puerto Rico Department of Corrections as a facility for service of Pilarte-Harrigan's federal sentence pursuant to § 3621(b). This designation allowed Pilarte-Harrigan's federal sentence to commence upon its imposition.

Pilarte-Harrigan maintains that the BOP acted arbitrarily in its application of the § 3621(b) factors and that it has failed to effectuate the sentencing judge's intent that his federal and commonwealth sentences run concurrently. (Pilarte-Harrigan Mem. Supp. § 2241 Pet. at 11.) As an initial matter, the court notes that the BOP's nunc pro tunc designation was beneficial to Pilarte-Harrigan because it allowed his federal sentence to commence the date it was imposed and run concurrently with his undischarged commonwealth sentence. To the extent Pilarte-Harrigan claims that his federal sentence should run concurrently from the commencement of his non-federal sentence, this argument fails because a federal sentence cannot commence prior to the date it is imposed. See, e.g., Coloma v. Holder, 445 F.3d 1282, 1284-86 (11th Cir. 2006). Consistent with the sentencing judge's declaration, the BOP's nunc pro tunc designation allowed Pilarte-Harrigan's sentence to commence at the earliest possible

9

date and run concurrently with his Commonwealth of Puerto Rico sentence. Pilarte-Harrigan has failed to present any evidence in support of his claim that the BOP abused its discretion in making its nunc pro tunc designation under § 3621(b).

## 2. Prior Custody Credit

The second determination the BOP made in computing Pilarte-Harrigan's sentence was whether he was entitled to prior custody credit. Prior custody credit is governed by 18 U.S.C. § 3585(b), which provides:

> (b)   Credit for prior custody. -- A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

Section 3585(b) authorizes an award of prior custody credit only for time "that has not been credited against another sentence." United States v. Wilson, 503 U.S. 329, 333 (1992). Therefore, prior custody credit cannot be awarded for time that is credited towards a prisoner's state sentence. See United States v. Brown, No. 91-5877, 1992 WL 237275, at *1 (4th Cir. Sept. 25, 1992) (unpublished) (noting that under § 3585(b), "a defendant may receive credit against his federal sentence in official detention prior to the date his sentence commences unless it has been credited against another sentence").

During Pilarte-Harrigan's sentencing hearing, the judge pronounced that "[t]ime already served in connection with the instant offense shall be credited." (Pet. Resp. Opp'n Mot. Summ.

10

J. Ex. 1 (Sentencing Tr. at 13).) Pilarte-Harrigan maintains that this pronouncement entitles him to prior custody credit from January 27, 2004, the date federal officials acquired temporary custody of Pilarte-Harrigan, to September 22, 2005, the day before his federal sentence was imposed. (Mot. Traverse Opp'n Respondent's Reply Mot. 3.) The BOP initially did not award Pilarte-Harrigan prior custody credit because the time while Pilarte-Harrigan was in temporary federal custody was credited to his commonwealth sentence which commenced February 5, 2003. To award prior custody credit for his pre-sentence detention time, the BOP reasoned, would directly contravene § 3585(b)'s prohibition of awarding prior custody credit for time that is credited against another sentence. (Mot. Summ. J. Ex. 1 (Farrar Aff. ¶ 14).)

Pilarte-Harrigan claims that the BOP's denial of prior custody credit constitutes a usurpation of judicial authority because it fails to conform with the sentencing judge's intent. (Pilarte-Harrigan § 2241 Pet. at 5-6.) This argument is without merit. The BOP is vested with the authority of calculating a federal prisoner's period of incarceration and consequently whether the prisoner is entitled to an award of prior custody credit. Wilson, 503 U.S. at 334-35 ("Because the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the [BOP] has no choice but to make the determination as an administrative matter when imprisoning the defendant."). Because Pilarte-Harrigan's detainment prior to the date on which his sentence commenced was credited toward his commonwealth sentence, the BOP properly denied Pilarte-Harrigan prior custody credit for that time. See Fletcher v. U.S. Att'y Gen., Civil Action No. 09-379-KKC, 2010 WL 3938373, at **5-6 (E.D. Ky. Oct. 5, 2010) (holding that BOP correctly determined that inmate was not entitled to prior custody credit under § 3585(b) despite sentencing judge's

declaration that such credit be awarded). Indeed, to compute his sentence otherwise would contravene § 3585's prohibition of receiving double credit for detention time.

Based on the foregoing, the court declines to adopt the Report and Recommendation to the extent that it is inconsistent with this order.

It is therefore

**ORDERED** that the Government's motion to dismiss or in the alternative motion for summary judgment, docket number 16, is granted.

**IT IS SO ORDERED.**

                                                            s/Henry M. Herlong, Jr.
                                                           Senior United States District Judge

Greenville, South Carolina
January 26, 2011

**NOTICE OF RIGHT TO APPEAL**

The Petitioner is hereby notified that he has the right to appeal this order within sixty (60) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.